## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HARDWIRE, LLC,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-20-0304** |
| **IRVIN EBAUGH, IV,** *et al.,* | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Hardwire, LLC ("Hardwire") filed suit against Irvin Ebaugh, IV and Infrastructure Armor, LLC ("IA"), alleging violations of federal and state trade secrets laws, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and state common law tort claims. (Compl., ECF No. 1.)  Hardwire later amended its Complaint to add Freyssinet, Inc. ("Freyssinet USA") and Freyssinet International Et Cie ("Freyssinet International") as Defendants. (First Am. Compl., ECF No. 40.)  Freyssinet USA now moves to stay discovery and pre-trial deadlines in this case, as applied to Freyssinet USA, pending the resolution of its Motion to Dismiss (ECF No. 50). (Mot. Stay, ECF No. 52.)  Hardwire opposes Freyssinet USA's Motion to Stay and cross-moves to modify the Scheduling Order in this case pursuant to Federal Rule of Civil Procedure 16(b).  (Opp'n to Mot. Stay, ECF No. 58.)  Both motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, Freyssinet USA's Motion to Stay Discovery and Pre-Trial Deadlines (ECF No. 52) will be denied, and Hardwire's Cross-Motion to Modify the Scheduling Order (ECF No. 58) will be granted.  All

1

deadlines in the Scheduling Order (ECF No. 34, *as amended by* ECF No. 37) in this case will be extended by sixty days.

## I.   *Background*

Hardwire, a technology company that specializes in the development of protective armor, sued Ebaugh and IA (collectively, the "IA Defendants") on February 4, 2020. (*See* Compl.) Hardwire alleged in its Complaint that Ebaugh stole trade secrets and other confidential information after being fired from his role as Vice President and Program Manager of Hardwire's bridge security division. (*Id.* ¶¶ 11–13, 43, 111.) Then, Hardwire claimed, armed with this cache of Hardwire's proprietary bridge technology, Ebaugh established IA and misappropriated Hardwire's trade secrets to obtain a multi-million-dollar contract to provide bridge armor for the replacement of the Kosciuszko Bridge (the "K Bridge project") in New York. (*Id.* ¶¶ 16, 21.)

Although Hardwire stated in its Complaint that it was initially unaware of Ebaugh's theft of the company's confidential information, Hardwire realized that something was amiss due to the behavior of Freyssinet International, a bridge cable manufacturer with which Hardwire had worked on past pitches and projects. (*Id.* ¶ 63.) Although Hardwire and Freyssinet International had allegedly been subject to a Memorandum of Understanding ("MOU"), in which Freyssinet International pledged not to enter into agreements with other providers of armor technology, Freyssinet International suddenly stopped responding to Hardwire's communications regarding proposed collaborations and refused to sign a long-term agreement contemplated by the MOU after Ebaugh's termination. (*Id.* ¶ 64.)

Despite engaging another business partner for bridge protection projects due to Freyssinet International's unresponsiveness, Hardwire allegedly submitted a proposal to Freyssinet International for the K Bridge project. (*Id.* ¶ 70.) When Hardwire followed up weeks after

2

submitting its proposal, Freyssinet International allegedly informed Hardwire that it "had been dealing with Ebaugh" and "requested Hardwire's drawings of its system design." (*Id.* ¶ 71.) Although Hardwire alleged that it "submitted generic plans and drawings with minimal details and reduced its price again in an attempt to win the job," Freyssinet International awarded the contract for the K Bridge project's armor work to IA, and Freyssinet International and IA provided the stay cable system and armor work for the K Bridge project. (*Id.* ¶¶ 71, 73, 79–80, 84.)

During the discovery phase of its case against the IA Defendants, Hardwire alleged that it received documents demonstrating that Freyssinet USA and Freyssinet International "breached the terms of the [non-disclosure agreement between the parties] and fraudulently induced Hardwire to disclose confidential and proprietary information." (First Am. Compl. ¶ 121.) Hardwire alleged that Freyssinet USA and Freyssinet International then provided this information to the IA Defendants to "further an unlawful anticompetitive scheme intended to harm Hardwire and suppress its ability to bid on and obtain certain projects." (*Id.*) As a result of this discovery, Hardwire moved to amend its Complaint to add Freyssinet USA and Freyssinet International as Defendants (*see* ECF No. 38), and on December 18, 2020, the Court granted Hardwire's motion (*see* ECF No. 39).

## II.   *Motion to Stay*

Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense" by, *inter alia*, "(A) forbidding the disclosure or discovery; [or] (B) specifying terms, including time and place, for the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A)–(B). Courts are empowered by Rule 26(c) to stay discovery upon a showing of good cause by the moving party. *Wymes v. Lustbader*, Civ. No. WDQ-10-1629, 2012 WL 1819836, at *3 (D. Md. May 16, 2012) (internal quotation marks and

3

citations omitted).    In order to establish good cause, a moving party "may not rely upon 'stereotyped and conclusory statements,' but must present a 'particular and specific demonstration of fact,' as to why a protective order should issue." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting 8A CHARLES ALAN WRIGHT, *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 2035 (3d ed. 1994)).  To demonstrate that a stay of discovery is warranted, "[t]he moving party must come forward with a specific factual showing that the interest of justice and considerations of prejudice and undue burden to the parties require a protective order and that the benefits of a stay outweigh the cost of delay." *Wymes*, 2012 WL 1819836, at *3 (alteration in original) (internal quotation marks and citation omitted).  The good cause requirement "creates a rather high hurdle for proponents," but trial courts retain "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Natanzon*, 240 F.R.D. at 202 (internal quotation marks omitted) (quoting *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999)).

Courts often grant stays of discovery pending the resolution of dispositive motions because "such stays can be 'an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'" *Cognate BioServices, Inc. v. Smith*, Civ. No. WDQ-13-1797, 2015 WL 5673067, at *2 (D. Md. Sept. 23, 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979)).  A court should generally deny a stay of discovery "if discovery is needed in defense of the motion, or if resolution of the motion will not dispose of the entire case." *Natanzon*, 240 F.R.D. at 203 (internal quotation marks and citations omitted).  Because a stay of discovery can cause "case management problems, a prolongation of the proceedings, and a duplication of the costs of counsel," courts "must carefully weigh the potential costs and benefits." *Smith*, 2015 WL 5673067, at *2.

4

Freyssinet USA argues that the Court should stay its deadlines because a stay would

conserve the resources of the Court and the parties; a stay would not prejudice the IA Defendants;

and any prejudice to Hardwire would be limited and outweighed by the benefits of a stay. (Mot.

Stay Mem. Supp. at 5–6, ECF No. 52-1.) In opposition, Hardwire points out that Freyssinet USA

would be subject to discovery requests as a third party even if Hardwire's claims against it were

dismissed. (Opp'n to Mot. Stay at 11.) Indeed, Hardwire had served a subpoena on Freyssinet

USA seeking records concerning its dealings with the IA Defendants and the K Bridge project

before Freyssinet USA was named as a Defendant in the First Amended Complaint. Although

Hardwire agreed to withdraw the subpoena after filing its First Amended Complaint, that

withdrawal came two business days before Freyssinet USA's production of documents would have

been due under the subpoena. (*Id.* at 1.) As a result, Hardwire contends, "assuming Freyssinet

USA proceeded in good faith to meet the agreed-upon production date, Freyssinet USA's

responsive documents should be ready (or close to ready) for production." (*Id.* at 1–2.)

The Court finds that a stay of discovery and other pre-trial deadlines with respect to

Freyssinet USA is not warranted at this time. Although Freyssinet USA correctly points out that

it would be subject to circumscribed discovery obligations as a third party—as opposed to a

Defendant—in the case (*see* Reply Mot. Stay at 7, ECF No. 64), the Court finds that the burdens

imposed on Freyssinet USA in fulfilling its pre-trial deadlines are outweighed by the potential case

management issues posed by a stay. Even if the Court grants Freyssinet USA's Motion to Dismiss,

Hardwire's claims against the IA Defendants will survive. Granting a stay of pre-trial deadlines

only with respect to Freyssinet USA could create a situation where different parties have different

deadlines for dispositive motions and other matters, which "could potentially create case

management problems for the court as well as problems for the remaining parties." *See Fed. Ins.*

*Co. v. S. Lithoplate, Inc.*, Civ. No. JCF-12-0793, 2013 WL 4045924, at \*1 (E.D.N.C. Aug. 8, 2013). The Court finds that Freyssinet USA has not carried its heavy burden of establishing good cause for a stay of the discovery and pre-trial deadlines in this case. *Natanzon*, 240 F.R.D. at 202 (explaining that the good cause requirement "creates a rather high hurdle for proponents"). Accordingly, the Court denies Freyssinet USA's Motion to Stay Discovery and Pre-Trial Deadlines (ECF No. 52).

### III.  *Motion to Modify Scheduling Order*

Hardwire cross-moves for a modification of the Scheduling Order under Federal Rule of Civil Procedure 16(b)(4). (Opp'n to Mot. Stay at 12–13.) A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (citations omitted).  When analyzing whether good cause exists, courts generally weigh "'the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.'" *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (quoting *Rothenberg v. Marriott Int'l, Inc.*, Civ. No. CCB-08-0173, 2008 WL 687033, at \*1 (D. Md. Feb. 29, 2008)).

Hardwire asserts that it has acted diligently to comply with the existing schedule and that there is good cause for a modification of the deadlines set forth by the Scheduling Order in this case. (*See* Opp'n to Mot. Stay at 12.) The Court agrees and further notes that Freyssinet USA

6

would not be prejudiced by a delay, and there is no evidence that Hardwire has not acted in good faith in making its request.  As such, the Court grants Hardwire's motion for a modification of the Scheduling Order (ECF No. 58).  All deadlines in the Scheduling Order (ECF No. 34, *as amended by* ECF No. 37) in this case will be extended by sixty days.

**IV.  Conclusion**

For the foregoing reasons, an Order shall enter (1) denying Freyssinet USA's Motion to Stay Discovery and Pre-Trial Deadlines (ECF No. 52) pending the resolution of its Motion to Dismiss, and (2) granting Hardwire's Cross-Motion to modify the Scheduling Order in this case (ECF No. 58).

DATED this ___11___ day of May, 2021.

BY THE COURT:

James K. Bredar
Chief Judge